**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

EARL L. CLOSSON,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No. C 06-4095-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND
COMMISSIONER'S OBJECTIONS**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. For Reviewing A Magistrate Judge's Report And Recommendation* . . . . 2
    *B. For Reviewing The Commissioner's Final Decision* . . . . . . . . . . . . . 6

*III. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A. Un-Objected-To Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *B. Objected-To Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *1. Whether the ALJ could rely on the VE's testimony* . . . . . . . 10
        *2. Should the case be remanded for an immediate award of
        benefits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

Plaintiff Earl Closson applied for Title II disability insurance benefits and Title XVI supplemental security income benefits in July of 2003. Closson claimed he was entitled to benefits as a result of spinal cord injuries and related problems. R. 78. The final decision of the Commissioner denied benefits to Closson. Closson sought judicial review in this court and the matter was referred to Chief Magistrate Judge Paul A. Zoss. Judge Zoss respectfully recommended the Commissioner's decision be reversed and that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a finding of disability and for the calculation and award of benefits. Dkt. # 17. Closson did not object to Judge Zoss's recommendation. The Commissioner timely filed his objections. Dkt. # 18.

The relevant factual background, as well as the factual findings the Commissioner disputes in his objections, will be discussed in the court's legal analysis.

## II. LEGAL STANDARDS

### A. For Reviewing A Magistrate Judge's Report And Recommendation

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and

recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails

review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

## B.  For Reviewing The Commissioner's Final Decision

Of course, the court must also keep in mind the standards for reviewing the Commissioner's final decision and the applicable standards for making a disability determination. These standards were detailed in Judge Zoss's report and recommendation, so the court will only briefly summarize them here. Dkt. # 17.

A disability determination must be made using the five-step sequential process outlined in the federal regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("The Commissioner uses a five-step evaluation to determine if a claimant is disabled."). First, the Commissioner considers the claimant's

work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, then the Commissioner determines if the claimant has a "severe medically determinable physical or mental impairment" under the second step. *Id.* § 416.920(a)(4)(ii). If not, then the claimant is not disabled. If so, then the Commissioner goes on to the third step to determine if the severe impairment "meets or equals" a listed impairment. *Id.* § 416.920(a)(4)(iii). The claimant is disabled if the impairment is listed, but, if not, the Commissioner must assess the claimant's "residual functional capacity and [his or her] past relevant work" under the fourth step. *Id.* § 416.920(a)(4)(iv). If the claimant can still perform past relevant work, the claimant is not disabled. However, if the claimant cannot perform past relevant work, then at the fifth and final step the Commissioner determines if the claimant "can make an adjustment to other work." *Id.* § 416.920(a)(4)(v). The claimant is not disabled if he or she can adjust to other work.

If appealed, the court reviews the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

### III. LEGAL ANALYSIS

#### A. Un-Objected-To Findings

Judge Zoss made three basic recommendations or findings that were not objected to by either party. These recommendations include: (1) that the record contains substantial evidence to support the administrative law judge's (ALJ) conclusion that Closson's mental impairment does not meet or equal a listing level (specifically the criteria in listing § 12.05 for mental retardation); (2) that Closson was not disabled under vocational rule § 201.17; and (3) that the ALJ did not improperly discount the opinions of Drs. Durward, Clark and Walz. Dkt. # 17. The court reviews these recommendations for clear error. *See Raddatz*, 447 U.S. at 675 (noting a district court "'would have to give fresh consideration to those issues to which specific objection has been made'" (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163)); *Grinder*, 73 F.3d at 795 (noting a clear error review is appropriate when no objections are filed).

The court is not left with "a definite and firm conviction" that Judge Zoss made a mistake regarding his un-objected-to recommendations listed above. *U.S. Gypsum Co.*, 333 U.S. at 395. Judge Zoss explained his rationale thoroughly, and the court finds no basis to disagree. Regarding the first un-objected-to finding noted above, Closson's verbal (76), performance (78), and full scale (75) IQ scores do not fall within the required range for listing § 12.05(C) to apply. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (requiring "[a] valid verbal, performance, or full scale IQ of 60 through 70"). Regarding the second un-objected-to finding, Closson can communicate in English. Therefore, vocational rule § 201.17 does not direct a finding of disability. *Id.*, App. 2, § 201.17 (directing a finding of disability when, *inter alia*, the claimant is "[i]lliterate or unable to communicate in English"). Finally, regarding Judge Zoss's third un-objected-to finding noted above, the ALJ did include in his second hypothetical question to the VE and in his

residual functional capacity assessment that Closson could only occasionally twist his neck and only occasionally work with his arms above his head.  R. 20, 367.  These limitations are consistent with the opinions of Closson's doctors and, therefore, the doctors' opinions were not improperly discounted by the ALJ.

### B.  Objected-To Findings

The Commissioner specifically objects to the findings at pages 29 to 34 in Judge Zoss's report and recommendation.  In this portion of his report and recommendation, Judge Zoss recommended the Commissioner's decision be reversed because substantial evidence failed to support the Commissioner's conclusion that Closson could perform "other work" under step five.  20 C.F.R. § 416.920(a)(4)(v).  Specifically, Judge Zoss found the testimony from the VE could not be used to support the ALJ's decision because Closson could not, according to the Dictionary of Occupational Titles (DOT) and Closson's residual functional capacity, perform the other work the VE identified.[1]  In other words, Judge Zoss determined a conflict existed between the VE's testimony and the DOT.  Judge Zoss also recommended in this portion of his report and recommendation that the case be remanded for an immediate award of benefits because the record overwhelmingly supported a finding of disability.  The Commissioner argues the ALJ's decision should be affirmed because the VE's testimony that Closson could perform other work is reliable and provides substantial evidence for the Commissioner's decision.  Further, the Commissioner argues that even if the ALJ erred in relying on the VE's testimony, the proper remedy in this case is further consideration by the agency.  The

---

[1] In fact, Judge Zoss determined that "Closson would be unable to perform *any* job listed in the DOT" because of Closson's residual functional capacity.  Dkt. # 17.

court reviews the objections and this portion of Judge Zoss's report and recommendation de novo. 28 U.S.C. § 636(b)(1).

### 1.    Whether the ALJ could rely on the VE's testimony

The first question presented by the Commissioner's objections is whether the ALJ could rely on the VE's testimony that Closson could perform "other work." The resolution of this issue is squarely controlled by Social Security Ruling 00-4p.[2] SSR 00-4p "clarifies [the Commissioner's] standards for the use of [VEs] who provide evidence at hearings before [ALJs]." SSR 00-4p. The ruling indicates that "[i]n making disability determinations, [the Commissioner] rel[ies] primarily on the DOT," but that VE testimony is also helpful and necessary to "resolve complex vocational issues." *Id.* SSR 00-4p further states:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides

---

[2] "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, in accordance with 20 C.F.R. § 402.35(b)(1), and are to be relied upon as precedents in adjudicating cases." SSR 00-4p. SSR 00-4p went into effect December 3, 2000. *Id.*

a basis for relying on the VE or VS testimony rather than the DOT information.

*Id*. SSR 00-4p makes it perfectly clear why the ALJ may choose to rely on testimony from the VE rather than the information contained in the DOT:

> The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

*Id*. SSR 00-4p explains further:

> The DOT lists *maximum requirements* of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

*Id*. (emphasis added).

Since SSR 00-4p's enactment in December of 2000, the Eighth Circuit has only addressed the ruling twice on appeal. The court made a passing reference to the ruling the first time. *Jones v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003). The second time, in *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007), the court addressed the ruling more substantively, and held the "ALJ did not follow [the] policy [stated in SSR 00-4p] and so erred." Nevertheless, even in *Renfrow*, the Eighth Circuit Court of Appeals did

not elaborate on the requirements or details of SSR 00-4p, but rather deferred to the Ninth Circuit's earlier analysis of SSR 00-4p in *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). *See Renfrow*, 496 F.3d at 921 (citing *Massachi* twice).

Despite the Eighth Circuit Court of Appeals few, in fact, one, substantive discussion of SSR 00-4p, the court has consistently announced principles closely related to those found in SSR 00-4p. *Cf. Massachi*, 486 F.3d at 1153 (noting Ninth Circuit precedent that predated SSR 00-4p was consistent with the requirements of SSR 00-4p). For example, prior to SSR 00-4p's effective date, the Eighth Circuit Court of Appeals directed that "[w]hen expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). The Eighth Circuit Court of Appeals has also stated, prior to the enactment of SSR 00-4p, that the "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range," *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997), and that the "DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities," *Wheeler v. Astrue*, 224 F.3d 891, 897 (8th Cir. 2000). "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." *Id.* Moreover, the Eighth Circuit Court of Appeals has reiterated these principles after the enactment of SSR 00-4p. *See, e.g.*, *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 366-67 (8th Cir. 2007) ("[A]n ALJ cannot rely on expert testimony that conflicts with the job classifications in the [DOT] unless there is evidence in the record to rebut those classifications. The [DOT] definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range. [N]ot all of the jobs in every category have requirements

identical to or as rigorous as those listed in the [DOT]." (internal quotations and citations omitted)).

In answering the question before the court—whether the ALJ properly relied on the VE's testimony—the court's first task under Eighth Circuit case law and, more specifically, under SSR 00-4p, is to determine whether the testimony from the VE conflicts with the DOT. *See* SSR 00-4p (requiring adjudicators to resolve conflicts in occupational information only when, of course, there is a conflict); *Renfrow*, 496 F.3d at 920-21 (first addressing the Commissioner's concession that the ALJ erred because there was a conflict between the VE's testimony and the DOT, and the ALJ did not resolve the conflict). The VE testified that, given Closson's residual functional capacity, Closson could work as a dowel inspector, button reclaimer, lamp-shade assembler, or fishing-rod assembler. R. 23. According to the DOT, three of these jobs have "level one" math and language development skills, and the fourth (fishing-rod assembler), has level one math skills and "level two" language skills. For example, the DOT describes the occupation of dowel inspector as the following:

> Inspects dowel pins for flaws, such as square ends, knots, or splits, and discards defective dowels.
> **GOE: 06.03.02 STRENGTH: S GED: R1 M1 L1 SVP: 2 DLU: 77**

U.S. Dep't of Labor, Dictionary of Occupational Titles § 669.687-014 (4th ed. 1991) [hereinafter DOT].[3] The words, letters, and numbers in bold represent the five "components of the definition trailer." *Id.*, App. C. "The last item in the trailer, the Date of Last Update (DLU), is the date of the most recent material gathered in support of that

---

[3] The DOT is available at http://www.oalj.dol.gov/libdot.htm#definitions. The DOT identification number for button reclaimer is 734.687-042; for lamp-shade assembler, 739.684-094; and for fishing-rod assembler, 732.684-066.

occupation." *Id.*, App. A.[4]  The first four components listed represent the "profile" of "selected occupational analysis characteristics." *Id.*  These components include the "GOE Code; Strength rating; R, M, and L of GED; and SVP." *Id.*  "GOE" stands for the "Guide for Occupational Exploration;" the "Strength rating" is equivalent to "Physical Demands;" "GED" stands for "General Education Development," and "R," "M," and "L" stand for "Reasoning," "Mathematical," and "Language" development, respectively; and "SVP" stands for "Specific Vocational Preparation." *Id.*, App. C.  The numbers or letters following each characteristic correspond to a code, term, or level to identify the requisite kind of skills generally needed to perform that occupation. *Id.*

The "M 1" and "L 1" marks included in the dowel inspector definition trailer refer to "level one" GED mathematical and language development levels.  There are six possible development levels listed in the DOT for language and math, and level one is the lowest. *Id.*  According to the DOT, a person with level one mathematical development can "[a]dd and subtract two-digit numbers," "[m]uliply and divide 10's and 100's by 2, 3, 4, [and] 5," "[p]erform the four basic arithmetic operations with coins as part of a dollar," and "[p]erform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." *Id.*  A person with level one language development can "[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words," "[r]ead at [a] rate of 95-120 words per minute," and "compare similarities and differences between words and between series of numbers." *Id.*  A person with level two language development ("L 2"), such as that indicated in the fishing-rod assembler definition trailer, has a "[p]assive vocabulary of 5,000-6,000 words," can "[r]ead at a rate of 190-215 words per minute," can "[r]ead adventure stories and comic books, looking up unfamiliar words in dictionary for meaning,

---

[4] "77" means 1977.  DOT, App. A.

spelling, and pronunciation," can "[r]ead instructions for assembling model cars and airplanes," can "[w]rite compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs," and can "[s]peak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses." *Id.*

The ALJ determined Closson's residual functional capacity included, among other things, the ability to "perform simple, routine, repetitive work *with no requirements for the use of written material or mathematical calculations.*" R. 20 (emphasis added). The court has little difficulty agreeing with Judge Zoss that Closson's residual functional capacity, and therefore the VE's testimony that was based on Closson's residual functional capacity, conflicts with the DOT. Simply put, Closson's residual functional capacity did not meet the maximum requirements listed in the DOT for work as a dowel inspector, button reclaimer, lamp-shade assembler, and fishing-rod assembler. Whereas the GED levels for these positions included the ability to use written material and perform basic calculations, Closson's residual functional capacity specifically excluded these abilities. Therefore, the "[o]ccupational evidence provided by [the] VE" in this case, was not "generally . . . consistent with the occupational information supplied by the DOT." SSR 00-4p. This created an "apparent . . . conflict" between the VE's testimony and the DOT. *Id.*; *see Porch*, 115 F.3d at 572 (holding that the "VE's testimony that [the claimant] could be employed in these positions given her level of education conflicts with the DOT" because "[u]nder the DOT's classification of the jobs, neither of the positions is compatible with [the claimant's] ability").

As a result, "before relying on [the] VE . . . evidence to support [his] disability determination," the ALJ must have "[i]dentif[ied] and obtain[ed] a reasonable explanation for [the] conflict[] between [the] occupational evidence provided by [the] VE . . . and [the]

information in the [DOT]." SSR 00-4p; *see Jones*, 315 F.3d at 979 ("[A]n ALJ cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications."). In this case, the apparent conflict between the VE's testimony and the DOT was never explained at the agency level. The Commissioner argues otherwise, stating the conflict between the VE's testimony and the DOT was reasonably explained or rebutted when the VE testified as follows:

> [T]he type of work that I've specified here really is the lowest of entry-level type activities. You're only talking about a few steps, and repeating it pretty much endlessly, so if you could do any type of work from a mental standpoint, and intellectual standpoint[,] it certainly would be this type of work. I mean it's unskilled work. As activity we talk about being learned within 30 days. Any of the jobs I mentioned would certainly be less than the 30 days . . . .

R. 371; *see Hillier*, 486 F.3d at 366-67 (finding no inconsistency between the VE's testimony and the DOT because the VE's testimony "and [the claimant's] job history supported a conclusion [that the claimant's] mental limitations did not preclude her from working"); *Wheeler*, 224 F.3d at 896-97 (finding no inconsistency between the VE's testimony and the DOT because "[t]he record in the present matter, including the testimony of the VE . . . supports the ALJ's conclusion").

The VE's statement does not offer a reasonable explanation for the conflict in this case. The VE only stated that the type of work he identified was of the "lowest of entry-level type activities." R. 371. The VE did not state that this meant the DOT's listed maximum requirements were inappropriate guides. The VE also did not distinguish the knowledge he had compared to the information in the DOT. Moreover, the court cannot find anything in the record that shows the other work attributed to Closson by the VE had lower GED levels than the maximum levels indicated in the DOT. As a result, the court

is not convinced a "reasonable explanation" or sufficient rebuttal was provided as required by SR 00-4p and Eighth Circuit law.

Even if a reasonable explanation had been obtained, SSR 00-4p places an "affirmative responsibility" upon the ALJ to ask about potential conflicts and to explain the resolution of the conflict in his or her decision. SSR 00-4p. SR 00-4p states:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> -Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> -If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SR 00-4p. Additionally, SSR 00-4p requires the ALJ to "explain in the determination or decision how he or she resolved the conflict." *Id.* Thus, SSR 00-4p essentially creates a tripartite duty upon the ALJ to inquire, resolve, and explain any conflict between the DOT and testimony from a VE.[5]

---

[5] The Seventh Circuit Court of Appeals has held that the ALJ has a duty to "ask a vocational expert how she reached her conclusions and whether her assessments conflict with the [DOT]." *Konkol v. Barnhart*, 75 Fed. Appx. 529, 534 (7th Cir. 2003) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). However, the Seventh Circuit Court of Appeals has held this duty "arises only if the claimant (or his counsel) explores a discrepancy" between the VE's testimony and the DOT. *Id.* "Otherwise, the ALJ is entitled to accept the expert's conclusion." *Id.* The Seventh Circuit, however, was not specifically addressing the duties under SSR 00-4p. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (noting SSR 00-4p had basically the "same effect," but it was "promulgated in December 2000 (and thus not directly applicable to this case)"). Moreover, the court rejects any suggestion by the Seventh Circuit that SSR 00-4p does not
(continued...)

In this case, the ALJ erred in all three duties. The VE provided evidence about "the requirements of a job or occupation" by testifying that Closson could work as a dowel inspector, button reclaimer, lamp-shade assembler, and fishing-rod assembler. R. 366-67; *see Massachi*, 486 F.3d at 1154 n.18 ("Although the [VE] was not providing evidence about the 'requirements of a job' by saying that [the claimant] was qualified for certain jobs in response to the ALJ's hypothetical question, [the VE] was indirectly providing such evidence."). The ALJ, however, failed to ask about any possible conflict between the VE's testimony and the information provided in the DOT despite the ALJ's "affirmative responsibility" to do so. *See* R. 364-74. Likewise, the ALJ failed to explain how the conflict was resolved in his decision despite his duty to do so. *See* R. 15-23. Therefore, exactly like the case in *Renfrow*, "[t]he ALJ did not follow [SSR 00-4p] policy and so erred." 496 F.3d at 920-21. However, unlike the case in *Renfrow*, there is an apparent conflict, and therefore the ALJ's error is not "harmless." *Id.* (recognizing the ALJ erred by not following the requirements of SSR 00-4p, but holding that such error was harmless because there was no conflict).[6]

---

[5](...continued)

impose its tripartite duties upon the ALJ unless the claimant or his counsel raise a potential conflict between the VE's testimony and the DOT. SSR 00-4p clearly requires the ALJ to ask about potential conflicts "when a VE or VS provides evidence about the requirements of a job or occupation," and the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p.

[6] The Commissioner does make a "harmless" argument in his objections, but not pursuant to *Renfrow*. The Commissioner argues any error is harmless because the VE explained the basis for his conclusion—essentially arguing the conflict between the DOT and the VE's testimony was rebutted or reasonably explained. As the court already found, the conflict was not rebutted or reasonably explained, and because there was a conflict, the ALJ's errors under SSR 00-4p are not harmless.

Because there was an unrecognized, unresolved, and unexplained conflict between the VE's testimony and the DOT, the VE's testimony cannot provide substantial evidence to support the ALJ's disability determination. More specifically, "an ALJ cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications." *Jones*, 315 F.3d at 979. There is no evidence in this record, other than the VE's unexplained testimony, to rebut the DOT's classifications or reasonably explain the conflict. As a result, the court accepts Judge Zoss's recommendation that substantial evidence fails to support the Commissioner's decision.[7] The Commissioner's decision must be reversed.

### 2.    *Should the case be remanded for an immediate award of benefits*

The court is not convinced that this case should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate finding of disability and for the calculation of award and benefits. Although Judge Zoss stated the correct standard, he did not indicate how the record "overwhelmingly" supported an immediate finding of disability, and the court cannot find such support. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) ("[W]e may enter an immediate finding of disability only if the record

---

[7] In doing so, the court does not accept Judge Zoss's determination that a person with a residual functional capacity lower than the DOT's "level one" GED marks cannot perform any occupation listed in the DOT. Because the DOT's occupational analysis characteristics are stated as "maximum requirements," a person is not necessarily jobless under the DOT when that person's residual functional capacity is below the maximum requirements stated in the DOT. In addition, and as the Commissioner points out, the medical-vocational guidelines indicate persons who are "[i]lliterate or unable to communicate in English" may, nevertheless, not be disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table Nos. 1 & 2; *see id.* § 200.00(a) ("Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.").

'overwhelmingly supports' such a finding." (quoting *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992))); *see also Blakeman v. Astrue*, 509 F.3d 878, 889 (8th Cir. 2007) (Bye, J., dissenting) ("Where the total record convincingly establishes disability and further hearing would merely delay the receipt of benefits, this court has ordered the immediate award of benefits without further proceedings."). Of course, at this stage in the analysis the Commissioner bears the burden of proof, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001), and "[w]hen expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls," *Porch*, 115 F.3d at 572 (citing *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995)). Thus, in this case, one could certainly argue that because the conflict between the VE's testimony and the DOT was not rebutted, "the DOT controls" and, therefore, the DOT offers "overwhelming" support for an immediate finding of disability. While tempting, the court declines to follow such an approach in this case.

First of all, and as already noted, the DOT lists "maximum requirements." *Hall*, 109 F.3d at 1259; SSR 00-4p. As a result, the DOT does not definitively indicate Closson could not perform the particular jobs noted by the VE. The DOT leaves open the possibility that other evidence could prove a claimant capable of performing a particular job even though the listed maximum requirements for that occupational category are higher than the claimant's residual functional capacity. Secondly, SSR 00-4p—which post-dates the Eighth Circuit language that "the DOT controls," *Porch*, 115 F.3d at 572—indicates that "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict," SSR 00-4p. Finally, SSR 00-4p also requires the ALJ to "fully develop the record," which requires the ALJ to look into and resolve conflicts between the DOT and the VE's testimony. SSR 00-4p. In this case, the record was not fully developed, as the conflict between the DOT and the VE's testimony was not addressed until appeal.

It may be that "the DOT controls" when the record reveals the conflict was addressed *and not* reasonably explained or rebutted. But when a conflict is left unaddressed, the court believes the better rule is to defer to the agency and remand for further proceedings to fully develop the record. *See Ingram v. Barnhart*, 303 F.3d 890, 895 (8th Cir. 2002) ("When the Commissioner's decision to deny benefits is improper, we ordinarily will remand for further proceedings out of an abundance of deference to the agency's authority to make benefits determinations."). After all, without a fully developed record, it is indeed difficult to find "overwhelming" support for an immediate award of benefits. Moreover, because further proceedings would help develop the record fully and ensure a proper decision, further proceedings would not "merely delay the receipt of benefits." *Thompson*, 957 F.2d at 614. Thus, the court remands the case for further development of the record pursuant to SSR 00-4p. *See Massachi*, 486 F.3d at 1153-54 (remanding the case "so that the ALJ can perform the appropriate inquiries under SSR 00-4p"); *Fuller v. Soc. Sec. Admin.*, No. 8:07CV125, 2007 WL 4527511, at *11-13 (D. Neb. Dec. 17, 2007) (reversing and remanding the ALJ's decision for further proceedings because the ALJ failed to follow the procedure in SSR 00-4p despite a conflict between the VE's testimony and the DOT).

## IV.  CONCLUSION

The court **accepts** Judge Zoss's recommendation **that the Commissioner's decision be reversed**. Substantial evidence does not support the Commissioner's decision to deny benefits to Closson. There is not, however, "overwhelming" support in the record to award Closson benefits on appeal. Therefore, on this point, the court **rejects Judge Zoss's recommendation that the case be remanded for a finding of disability**. This case is

remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the ALJ to properly develop the record according to SSR 00-4p and to issue a new decision.

**IT IS SO ORDERED.**

**DATED** this 21st day of February, 2008.

Mark W. Bennett

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA